SHAARON A. BANGS, 119457
E. SCOTT HOLBROOK JR., 143721
LAW OFFICES OF
CRAWFORD & BANGS, LLP.
1290 E. Center Court
Covina, California 91724
File No. 4093.05
Phone:   (626)   858-4207

Attorneys for Plaintiff
Franzen-Hill Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States, For The Use Of Franzen-Hill Corporation,<br><br>  Plaintiff,<br><br>v.<br><br>Dawson Federal Inc.; Westchester Fire Insurance Company, a corporation; and DOES 1 TO 10<br><br>  Defendants. | No.<br><br>COMPLAINT<br>1.  MILLER ACT BOND<br>2.  BREACH OF CONTRACT<br>3.  COMMON COUNTS |

Use Plaintiff complains and alleges:

1.  Plaintiff Franzen-Hill Corporation (hereinafter "FRANZEN-HILL") is a corporation duly organized and existing under and by virtue of the laws of the State of California and maintains a place of business in Tulare County, California.

2.  Plaintiff alleges, upon information and belief, Defendant Dawson Federal Inc. (hereinafter "DAWSON") is an entity of unknown form and operating and doing business in San Luis Obispo County California.

1

3. Plaintiff alleges, upon information and belief, Defendant, Westchester Fire Insurance Company (hereinafter "SURETY"), is a corporation duly organized, and authorized to transact business as surety in the State of California upon bonds and undertakings securing performance on that certain contract transaction which is the subject of this pending action.

4. FRANZEN-HILL alleges, upon information and belief, that Defendants DOES 1 TO 10, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. ECKLES will seek leave of court to amend this Complaint to insert the true names and capacities of these fictitiously named Defendants when they are ascertained.

5. At all times material, each of the Defendants sued in the causes of action alleged in this Complaint was the agent of the remaining Defendants and, in doing the things alleged in this Complaint, was acting within the course and scope of such agency.

6. This action arises under § 40 U.S.C.A., commonly known as the "Miller Act."

## FIRST CAUSE OF ACTION

## AGAINST DEFENDANT BONDING COMPANY AND DOES 1 TO 10

### (Miller Act Bond)

7. Use Plaintiff incorporates paragraphs 1 through 6 as though fully set forth below.

8 Defendant Contractor DAWSON was, at all times herein mentioned and now is the prime contractor for United States Government contract number W9128F-16-C-0001, for Mechanical Service. Defendant, Westchester Fire Insurance Company was, at all times herein mentioned and now is the surety under the Contract

and has furnished to the United States a performance and payment bond under the Contract.

9. On or about April 13, 2016, Plaintiff Subcontractor Franzen-Hill and Defendant Contractor DAWSON entered into a written subcontract agreement, a copy of which is attached as Exhibit A.

10. Pursuant to the subcontract attached as Exhibit A, Contractor DAWSON agreed to pay Subcontractor Franzen-Hill an original contract price of $49,703 and this contract was modified by direction of Contractor with a total now due and owing of $420,551.37 after credit for payments made.

11. On or about April 16, 2016, Subcontractor commenced work upon the subcontract mechanical work, and last provided labor and material June 20, 2017.

12. One year has not expired after the day on which the last of the labor and materials were supplied by Subcontractor.

13. As a direct and proximate result of the neglect and refusal of Contractor to pay to Subcontractor, the balance, or portions thereof, when due.

## SECOND CAUSE OF ACTION
## <u>DAWSON AND DOES 1 to 10</u>
### (Breach of Contract)

For a Second, Separate and Independent Cause of Action, Plaintiff alleges:

14. Plaintiff Subcontractor realleges all the allegations contained in paragraphs 1 through 13.

15. Between April 16, 2016 and June 20, 2017, Defendants, and each of them, became and were indebted to Subcontractor in the sum of $420,551.37 on account of work and labor performed, materials furnished, and cash paid by Subcontractor for Defendants, at Defendants' special instance and request, and under and pursuant to a written subcontract, modified by the several oral and written agreements. The work and labor was performed and materials furnished for mechanical services, as specified in the subcontract, and work to be done under the oral amendments, modifications and supplements to the subcontract, and there is now a balance due, owing and unpaid on account thereof, of $420,551.37.

16. Defendants have not paid to Plaintiff the sum of $420.551.37 nor any part thereof.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS DAWSON AND DOES 1 TO 10

### (Common Counts)

17. Plaintiff realleges and incorporates by reference Paragraphs 1 through 16 as though set forth herein in full.

18. With four years last past, in San Luis Obispo County, California, Defendants became indebted to FRANZEN-HILL on an open book account and an account stated for work, labor, services, equipment, and materials furnished to them, at their request, in the sum of $420,551.37.

6. No part of the above sum has been paid to FRANZEN-HILL leaving a balance due to FRANZEN-HILL of $420,551.37 together with interest thereon at the legal rate as allowed by law.

WHEREFORE, Use Plaintiff prays for Judgment as follows:

4

1. On the First Cause of Action as against Defendants, Westchester Fire Insurance Company and DAWSON, as follows:

    a. The principal sum of Four Hundred Twenty Thousand Six Five Hundred Fifty-One and 37/100 Dollars ($420,551.37), together with interest thereon at the legal rate per annum;

    b. For reasonable attorneys' fees incurred;

    c. For costs of suit;

    d. For such further and other relief as this Court deems just and proper.

2. On the Second and Third Causes of Action as against Defendant DAWSON, as follows:

    a. Damages in the amount of Four Hundred Twenty Thousand Six Five Hundred Fifty-One and 37/100 Dollars ($420,551.37), together with interest thereon at the legal rate;

    b. For reasonable attorneys' fees pursuant to contract;

    c. For costs of suit;

    e. For such further and other relief as this Court deems just and proper.

Dated: June 18, 2018

                        LAW OFFICE OF
                        CRAWFORD & BANGS

                        BY _____
                        E. SCOTT HOLBROOK, JR.
                        Attorney For Use-Plaintiff
                        Franzen-Hill Corporation

# SUBCONTRACT AGREEMENT
## 00287

This Agreement, effective this 13th day of April, 2016, entered into by and between **Dawson Federal, Inc.** (hereafter referred to as the Company or DAWSON), and **Franzen-Hill Corporation** (Hereafter referred to as the SUBCONTRACTOR).

WITNESS THAT

    WHEREAS, DAWSON has entered into **Contract Number W9128F-16-C-0001** with the **U.S. Army Corps of Engineers** (hereafter referred to as Client or Owner) and,

    WHEREAS, DAWSON wishes to retain the SUBCONTRACTOR to perform a certain portion of the work required by the Prime Contractor and,

    Whereas, the SUBCONTRACTOR is willing to undertake the performance of such work in accordance with the terms and conditions hereinafter set forth,

    NOW THEREFORE the parties hereby agree as follows:

**ARTICLE 1 – TYPE OF SUBCONTRACT**

The SUBCONTRACTOR shall provide all labor and other items and services necessary to properly perform the work as set forth in Appendix B, Statement of Work, (hereinafter referred to as the Work), at the location or locations specified therein. The work shall be performed on a **Fixed Price basis.**

**Subcontract Price**: In consideration for undertaking this Work, the Company shall pay to the SUBCONTRACTOR the sum of **$49,703.00** in payment as determined allowable by the Company in accordance with the payment provisions of the Subcontract Documents.

**Precedence**: In the event of any conflict or inconsistency between any of the Contract Documents, the following order of precedence shall prevail:

**This Subcontract Agreement No: 00287**
Appendix A General Provisions/Client Requirements
Appendix B Statement of Work

**ARTICLE 2 – SCHEDULE**

Work schedules are based upon the agreement that SUBCONTRACTOR will perform the work or services and deliver the merchandise by the date mutually agreed to with Subcontractor. Time is therefore of the essence of this Subcontract. If SUBCONTRACTOR fails to perform work or services or to deliver merchandise of the quantity and quality specified within the time and under the conditions herein specified, DAWSON may at its option, cancel this order and decline to accept any work or services, performed or unperformed, or any merchandise, shipped or unshipped, and upon the exercise of such option, DAWSON may buy the work, services, or merchandise elsewhere and charge SUBCONTRACTOR with any loss and expense incurred thereby, including consequential damages.

**The period of performance for this subcontract is from April 13, 2016 through November 30, 2016. Notice to proceed shall be coordinated by Nick Moore, work is unauthorized until notice to proceed is given.**

**ARTICLE 3 – EXCUSABLE DELAYS**

Neither Party shall be liable to the other for delays or failure to perform caused directly or indirectly by circumstances beyond that Party's control, including but not limited to, acts of God, fire, flood, war, sabotage, accident, labor dispute,

---

| Dawson Federal, Inc. | Subcontract Agreement No 00287 |
|---|---|
| | Franzen-Hill Corporation |



shortage, government action including regulatory requirements, changed conditions, delays resulting from actions or inactions of Client, Owner or third parties, site inaccessibility or inability of others to obtain material, labor, equipment, or transportation, provided and only to the extent, such delays are not the result of the negligence of the party claiming the delay. Should any of the above occur, then the date for Completion or any other milestone date shall be adjusted for such delay, provided where the SUBCONTRACTOR is claiming delay, the SUBCONTRACTOR reports the delay to DAWSON immediately upon its discovery.

**ARTICLE 4 – STATEMENT OF WORK**

The SUBCONTRACTOR shall provide services and personnel as defined in this Subcontract in order to perform services in accordance with Appendix B, "Statement of Work" attached hereto and forming a part hereof.

**ARTICLE 5 – TECHNICAL REPORTS**

(a) All reports outlined in the Statement of Work under Appendix B.
(b) Where required by DAWSON, the SUBCONTRACTOR shall furnish technical progress reports stating the progress made, including the percentage of the project completed, and a description of the work accomplished to support the cost.
(c) Specific discussions shall include difficulties encountered and remedial action taken during the reporting period, and anticipated activity with a schedule of deliverables for the subsequent report period.
(d) The SUBCONTRACTOR shall provide a list of outstanding actions awaiting DAWSON's Program Manager's authorization, noted with the corresponding work assignment.

**ARTICLE 6 – INVOICING AND PAYMENT**

The SUBCONTRACTOR shall submit invoices on a monthly basis in a form acceptable to DAWSON for services performed during the preceding period. Invoices shall be submitted to DAWSON by the 5th of each month for the month prior. Invoices submitted later than the 5th of the month may not be included with DAWSON current invoice to the government and be held over to the next billing period. Specific invoice formats shall meet the requirements of DAWSON and shall include all of the following information:

a. **Subcontractor Name**
b. **Subcontract Number**
c. **Invoice Number**
d. **Invoice Date**
e. **Invoice Dollar Amount**
f. **Release of Liens in Accordance with Paragraph 22 of this Agreement. Release of lien forms are attached as Appendix D.**

\*\* **Failure to include all information above will result in invoice rejection**\*\*

1. **Invoices shall be submitted to:**
   acctpay@dawson8a.com

DAWSON will issue payments to the SUBCONTRACTOR within 7 business days after receipt of payment from Client and after approval of SUBCONTRACTOR's properly submitted invoice for services provided hereunder. Any costs, which have been determined to be inadequately supported or otherwise questionable shall be considered suspended costs and will not be paid until adequate backup is furnished to DAWSON The SUBCONTRACTOR shall respond to any costs that DAWSON determines to be suspended within 60 days of DAWSON notification of such suspended costs. Despite any language in this Agreement to the contrary, no invoice shall be approved or paid for any work prior to Client's acknowledgment that the supplies or services conform with applicable contract quality and quantity requirements in the Request for Proposal and Statement of Work

**ARTICLE 7 – LIQUIDATED DAMAGES (FAR 52.211-12) – Reserved**

**ARTICLE 8 – E-VERIFY PROGRAM**
Within 30 calendar days of subcontract award, Subcontractor shall comply with FAR clause 52.222-54 – Employment Eligibility Verification regulation identified in Appendix A. Subcontractor shall sign and return the Employment Eligibility Verification Program (E-Verify) Acknowledgement and Compliance Form along with the Confirmation of E-Verify Enrollment and Verification Form provided in Appendix I.

**ARTICLE 9 – INSURANCE**

If Applicable the SUBCONTRACTOR shall maintain at its own expense the following minimum insurance coverage:

a.  Comprehensive General Liability:            $2,000,000 per occurrence.
b.  Automobile Liability:                       $1,000,000 per person;
                                                $1,000,000 per occurrence;
                                                $1,000,000 per occurrence for property damage.

c.  Workmen's Compensation: As required by Federal and State workers' compensation and occupational disease laws.

d.  Employer's Liability Coverage:              $2,000,000 except in States where Workers
                                                Compensation may not be written by private carriers

e.  Others as required by State Law.

DAWSON shall be named as an Additional Insured under such policies and the policies shall not be altered or cancelled without the SUBCONTRACTOR first providing thirty- (30) days advance written notice to DAWSON of its intent to alter or cancel. Failure to maintain insurance in compliance with this article shall be considered a breach of subcontract obligations hereunder and shall be cause for termination.

The SUBCONTRACTOR shall, at all times, be solely responsible for all vehicles and equipment utilized by the Subcontractor, its employees, agents, or its Subcontractors in the performance of work hereunder. In each and every case where loss or damage, including loss of use or personal injury or the death of personnel, is caused by the Subcontractor, its employees, agents, its Subcontractors, the Subcontractor's insurance shall be primary, and the SUBCONTRACTOR further agrees to indemnify and hold DAWSON harmless from any costs, expenses, claims, damages or causes of action resulting directly or indirectly from such loss or damage.

**Certificate(s) of Insurance shall be forwarded to Jeff Dollar @ Jdollar@dawson8a.com, and shall reference the agreement number assigned by DAWSON to this subcontract.**

**ARTICLE 10 – WARRANTY**

The SUBCONTRACTOR warrants to DAWSON that it possesses the expertise, capability, equipment and personnel to perform properly and professionally the services described in Appendix B "Statement of Work". The SUBCONTRACTOR shall be legally licensed (if applicable) to perform such services, and shall at all times comply with all applicable laws, ordinances and regulations and shall perform all services in a good, workmanlike, professional, efficient and non-negligent manner. SUBCONTRACTOR shall apply a one year warranty on all design, equipment, materials and workmanship commencing at project substantial completion.

**ARTICLE 11 – INDEMNIFICATION**

SUBCONTRACTOR shall indemnify, and save harmless DAWSON, its affiliates and subsidiaries, their officers, directors, and employees against all claims and suits for loss of or damage to property, or for personal injury to persons, including death, and from all judgments recovered therefore, to the extent arising out of the negligent acts or negligent

omissions of SUBCONTRACTOR in connection with Subcontractor's performance of the work covered by this Agreement

## ARTICLE 12 – PATENT WARRANTY AND INDEMNIFICATION

The SUBCONTRACTOR hereby makes the following representations and warranties for the benefit of DAWSON (a) It has a valid license or patent in its name, and has the legal right to use and employ for the benefit of DAWSON any and all technology, equipment, machinery, data, material and information to be used in the performance of, or in connection with, this Contract (hereinafter collectively referred to as "Technology"); (b) It has paid any and all necessary license fees, royalties, and related costs (hereinafter collectively referred to as Royalties and Fees") for any and all Technology; (c) The Technology is not now, nor has it previously been the subject of an allegation of or law suit for infringement against SUBCONTRACTOR or its affiliates.

If the Technology becomes subject of an allegation or suit for infringement, the SUBCONTRACTOR hereby agrees that it has an ongoing and continuous obligation to notify DAWSON within five (5) business days and shall take such action as directed by DAWSON to fulfill the Subcontractors indemnity obligations hereunder.

The SUBCONTRACTOR hereby agrees that all Royalties and Fees related to the Technology shall be the sole responsibility of the SUBCONTRACTOR and such shall be provided at no additional cost to DAWSON.

The SUBCONTRACTOR agrees to pay on demand any and all damages, costs and expense (including without limitation, expenses and fees of legal counsel, court costs and cost of appellate proceedings) incurred by DAWSON in connection with enforcing this provision. DAWSON will not be required to resort to or pursue any of its rights or remedies under or with respect to any other provision of this subcontract, agreement, or collateral before pursing any rights or remedies under this provision. DAWSON can at its sole option offset its costs and expenses hereunder against any amount owed to the SUBCONTRACTOR under this or any other contract between DAWSON and the Subcontractor. DAWSON's right and remedies under this provision are cumulative and not exclusive of any rights or remedies provided by law, this contract or any other contract.

The SUBCONTRACTOR agrees to include, and require inclusion of, this clause in all subcontracts at any tier for supplies or services issued by the SUBCONTRACTOR in connection with the Contract.

## ARTICLE 13 – CLAIMS AND LOSSES

To the fullest extent not prohibited by applicable law, SUBCONTRACTOR shall indemnify, hold harmless and defend DAWSON, its parent, officers, employees, successors, assigns and customers (collectively, "DAWSON") from and against all claims, liability, liens, loss, judgments, penalties, suits and damage (collectively "Claims") whether for breach of the Subcontract, personal injury, death or damage to property and including without limitation, any costs, expense and attorneys fees arising out of or caused by such Claims whether or not resulting or alleged to result from the negligence, but excluding sole negligence, of DAWSON

The SUBCONTRACTOR hereby agrees to indemnify DAWSON and its clients, parent, officers, agents, employees and successors against all claims, liability, loss or damage, including without limitation, any cost, expense or attorneys fees for, or allegation of, infringement upon any United States or foreign patent, copyright infringement, or Technology arising out of or relating to the Work and shall pay all costs and damages resulting therefrom.

Without limiting the obligations assumed by SUBCONTRACTOR under the herein paragraphs of this Article and as a separate obligation hereunder, SUBCONTRACTOR agrees to defend any claim, action or proceeding which may be brought against DAWSON arising out of or in connection with any Claim or the performance of Work hereunder, which is encompassed by the indemnity obligations set forth herein.

The Subcontractors obligations under this Article shall survive the termination or expiration of this subcontract.

**ARTICLE 14 – HEALTH AND SAFETY**

Safe practices are considered a priority requirement in the performance of this subcontract. The SUBCONTRACTOR shall, to the maximum extent practicable, be responsible for the conditions of the work site. This responsibility will encompass the safety of all persons, including employees, agents and lower tier subcontractors, as well as property for the duration of the services performed hereunder. The SUBCONTRACTOR shall comply with the all applicable Federal, State, and Local Health and Safety requirements and standards including, but not limited to, the Occupational Safety and Health Act of 1970, as amended, and the standards and regulations issued there under.

**UNFAMILIARITY WITH THE AFOREMENTIONED SAFETY PROVISIONS SHALL NOT RELIEVE SUBCONTRACTOR FROM COMPLIANCE WITH THE OBLIGATIONS AND PENALTIES SET FORTH THEREIN.**

**ARTICLE 15 – CONFIDENTIALITY**

SUBCONTRACTOR shall not publicly disclose any information concerning any aspect of the materials or services relating to this contract or Subcontract without the prior written approval of DAWSON. As it relates to this agreement, the SUBCONTRACTOR is not authorized to issue news releases, publish papers, or denials or confirmation of the agreement to any party without the express prior written approval of DAWSON, and to bind its employees, officer, agents, and all lower-tier Subcontractors to this same obligation.

**ARTICLE 16 – TERMINATION**

Termination for Convenience – All or part of this Agreement may be terminated by DAWSON for its convenience. In such event, SUBCONTRACTOR will be entitled to compensation for services competently performed up to the date of termination and reasonable termination expenses.

Termination for Default – If the SUBCONTRACTOR defaults in the performance hereof or breaches any of its obligations hereunder and fails to remedy such default or breach, or if SUBCONTRACTOR becomes insolvent, or a Trustee or receiver of Subcontractor's business or assets is appointed, or any petition in bankruptcy is filed by or against Subcontractor, this shall constitute a default under the terms of this Subcontract. In any such event DAWSON may terminate this Subcontract, in whole or in part, by prior written notice to the Subcontractor, and DAWSON shall have no liability or obligation whatsoever to SUBCONTRACTOR by reason of, or resulting from such termination.

Notice of Termination – DAWSON shall provide a written Notice of Termination and SUBCONTRACTOR shall proceed with the direction contained therein, and upon receipt of termination payment shall transmit to DAWSON all records related to Subcontractor's performance there under, including, but not limited to, samples, field data, laboratory data, analysis, tests, calculations, notes and results.

**ARTICLE 17 – AUTHORIZED REPRESENTATIVES**

The following named individuals are the Authorized Representatives of SUBCONTRACTOR and DAWSON for the execution of this Agreement for approval and direction as required herein:

**Franzen-Hill Corporation:**        Darren Thomas


**DAWSON FEDERAL, INC.:**        Jeff Dollar, Subcontract Manager
                                 Nick Moore, Project Manager


**ARTICLE 18 – DISPUTES**

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in Texas administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. During the pendency of any controversy or claim hereunder, the SUBCONTRACTOR shall proceed diligently with the performance of the subcontract and in accordance with the direction of DAWSON.

## ARTICLE 19 – CHANGES

Change Authorizations: DAWSON may unilaterally, by written order of DAWSON's Subcontract Administrator, make changes, revisions, additions, or deletions (collectively hereinafter called "changes") in the Work within the general scope of services provided by the Subcontractor. If any change causes an increase or decrease in the Subcontractor's cost or time for the performance of any part of the Work, DAWSON shall make an equitable adjustment in the Subcontract Time and/or Subcontract Price by Change Order.

Potential Changes: SUBCONTRACTOR will, upon knowledge of any potential changes (including actions, inactions, and written or oral communications) that do not conform to the authorized method of directing changes specified above, notify Company within 5 working days, of such changes and request written dispositions.

Changes in Writing: SUBCONTRACTOR will not proceed with any changes unless notified to proceed in writing by the DAWSON's Subcontract Administrator.

## ARTICLE 20 – NOTICE OF LABOR DISPUTES

In the event that the timely performance of work under this Subcontract is delayed or threatened to be delayed by any actual or potential labor dispute, SUBCONTRACTOR shall immediately notify DAWSON of all relevant information with respect to such dispute. SUBCONTRACTOR shall insert the substance of this Article in all Subcontracts and lower-tier Subcontracts issued hereunder.

## ARTICLE 21 – SOCIAL SECURITY AND WAGE TAX LIABILITY

With respect to all persons at any time employed by, or on the payroll of SUBCONTRACTOR in performing any services directly or indirectly under this Subcontract, SUBCONTRACTOR accepts full and exclusive liability for the payment of all contributions or taxes for unemployment insurance and old age retirement and other benefits, pensions or annuities, and wage or income taxes for unemployment insurance and old age retirement and other benefits, pensions or annuities, and wage or income taxes, now or hereafter imposed by the United States, and any state or political subdivision thereof, however the same be measured. If DAWSON shall be required by law to pay any contribution, tax or penalty because of Subcontractor's failure to furnish the aforesaid information, SUBCONTRACTOR shall forthwith reimburse DAWSON for the entire amount so paid.

## ARTICLE 22– RELEASE OF LIENS AND ALL CLAIMS

**DAWSON requires SUBCONTRACTOR to provide a properly executed Partial Release of Liens and All Claims along with all invoices for services performed hereunder (Appendix D). A Final Release of Liens and All Claims shall be provided prior to release of the final payment by DAWSON**

## ARTICLE 23 – ASSIGNMENT

This subcontract may not be assigned by the Subcontractor, either in whole or in part, without the prior written consent of DAWSON.

**ARTICLE 24 – KEY PERSONNEL**

SUBCONTRACTOR will provide qualified personnel to perform its work. Within 10 days of execution of this Agreement or receipt of a written authorization to proceed, SUBCONTRACTOR will submit a list of key personnel assigned to this contract. If an employee leaves the employment of the SUBCONTRACTOR prior to completion of the work, SUBCONTRACTOR shall notify DAWSON and submit an individual of equivalent or superior qualifications to replace that person. SUBCONTRACTOR will not change or reassign personnel assigned to this contract without the written consent of DAWSON.

**ARTICLE 25 – SET-OFF**

DAWSON shall be entitled to set-off any amount owed to DAWSON by the SUBCONTRACTOR or any of its affiliates, against any amount payable to SUBCONTRACTOR by DAWSON, or any of its affiliates.

**ARTICLE 26 – SEVERABILITY**

Any provision or part thereof of this Subcontract held to be void or unenforceable under any law or by any court shall be deemed stricken and all remaining provisions shall continue to be valid and binding upon the parties. The parties may reform or replace such stricken provision or part thereof with a valid and enforceable provision, which expresses the intent of the stricken provision.

**ARTICLE 27 – GOVERNING LAW**

This agreement is deemed to be made under and shall be construed in accordance with the laws of the State of Texas and constitutes the entire understanding between the parties hereto with respect to the subject matter of this Agreement. Any modifications or changes made subsequent hereto shall not be binding unless they are in writing and signed by both parties.

**ARTICLE 28 – WAIVER OF LIENS**

Subcontractor, for itself, its lower tier subcontractors, materialmen, laborers, and for all other persons performing any labor or furnishing any services, labor or materials for any of the Work covered by this Contract, hereby waives, to the full extent permitted by law, all rights to have filed or maintained any mechanics' or other liens or claims for or on account of the services, labor or materials to be furnished hereunder.

SUBCONTRACTOR (1) shall indemnify and save harmless Owner and DAWSON from all laborers', material men's and mechanics' liens upon the real property upon which the Work is located arising out of the services and materials furnished by Subcontractor, its lower tier subcontractors and other in connection with the Work, and (2) shall keep said property free and clear of all liens, and encumbrances arising from the performance of the Contract by Subcontractor, its lower tier subcontractors and others.

Final payment will not be made by DAWSON until a properly executed SUBCONTRACTOR Release of Liens and All Claims Certificate has been received by DAWSON as stated in Article 22. Said form should accompany the final invoice to ensure no delay in payment to Subcontractor.

**ARTICLE 29 – PAYMENT AND PERFORMANCE BONDS – Reserved**

**ARTICLE 30 – DAVIS BACON ACT**

**General Decision No.: CA20150019, Publication Date 09/25/2015, applies for all employees covered by the Davis Bacon Act.**

ARTICLE 31 – VIETNAM ERA VETERANS' READJUSTMENT ASSISTANCE ACT (VEVRAA)

This contractor and subcontractor shall abide by the requirements of 41 CFR 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, sexual orientation, gender identity or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, disability or veteran status.

ARTICLE 32 - PAY TRANSPARENCY NONDISCRIMINATION PROVISION

The Subcontractor will not discharge or in any other manner discriminate against employees or applicants because they have inquired about, discussed, or disclosed their own pay or the pay of another employee or applicant. However, employees who have access to the compensation information of other employees or applicants as a part of their essential job functions cannot disclose the pay of other employees or applicants to individuals who do not otherwise have access to compensation information, unless the disclosure is (a) in response to a formal complaint or charge, (b) in furtherance of an investigation, proceeding, hearing, or action, including an investigation conducted by the employer, or (c) consistent with the contractor's legal duty to furnish information.

IN WITNESS THEREOF, the parties hereto have set their hands and seal intending to be legally bound hereby.

**Franzen-Hill Corporation**                                **Dawson Federal, Inc.**

Sign _____                                   Sign _____
Print _____                                  Print   Jeff Dollar
Title _____                                  Title   Subcontract Manager
Date: _____                                  Date: _____